**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
SHIVA STEIN,                                          :
                                                      :
              Plaintiff,                              :   Civil Action No. 1:21-cv-2474
                                                      :
v.                                                    :
                                                      :   **COMPLAINT FOR VIOLATIONS OF**
PROTECTIVE INSURANCE                                  :   **SECTIONS 14(a) AND 20(a) OF THE**
CORPORATION, STEVEN J. BENSINGER,                     :   **SECURITIES EXCHANGE ACT OF**
STUART D. BILTON, OTTO N. FRENZEL                     :   **1934**
IV, STEPHEN J. GRAY, JEREMY D.                        :
EDGECLIFFE-JOHNSON, LORIANN V.                        :   **JURY TRIAL DEMANDED**
LOWERY-BIGGERS, DAVID W.                              :
MICHELSON, JOHN D. NICHOLS, JR.,                      :
JAMES A. PORCARI III, NATHAN                          :
SHAPIRO, and ROBERT SHAPIRO,                          :
                                                      :
              Defendants.                             
---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Protective Insurance, Inc. ("Protective Insurance or the "Company") and the members Protective Insurance board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Protective Insurance by Progressive Corporation ("Progressive") and its affiliates.

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 10, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Carnation Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Progressive, will merge with and into Protective Insurance with Protective Insurance continuing as the surviving corporation (the "Proposed Transaction").   Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Protective Insurance common share issued and outstanding will be converted into the right to receive $23.30 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Protective Insurance stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Piper Sandler & Co. ("Piper Sandler") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Protective Insurance stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants transact business in this District; the Company's financial and legal advisors are headquartered in this District, and the Company's stock trades on the NASDAQ Stock Exchange which is also headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Protective Insurance common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Steven J. Bensinger has served as a member of the Board since 2018.

11. Individual Defendant Stuart D. Bilton has served as a member of the Board since 1987 and as Lead Director since June 2018.

12. Individual Defendant Otto N. Frenzel IV has served as a member of the Board since 2008.

13. Individual Defendant Stephen J. Gray has served as a member of the Board since 2019.

14. Individual Defendant Jeremy D. Edgecliffe-Johnson has served as a member of the Board since 2019 and is the Company's Chief Executive Officer.

15. Individual Defendant Loriann V. Lowery-Biggers has served as a member of the Board since 2017.

16. Individual Defendant David W. Michelson has served as a member of the Board since 2018.

17. Individual Defendant John D. Nichols, Jr. has served as a member of the Board since 2017 and as Chairman of the Board since October 2018.

18. Individual Defendant James A. Porcari III has served as a member of the Board since 2017.

19. Individual Defendant Nathan Shapiro has served as a member of the Board since 1979.

20. Individual Defendant Robert Shapiro has served as a member of the Board since 1997.

21. Defendant Protective Insurance is incorporated in Indiana and maintains its principal offices at 111 Congressional Boulevard, Carmel, Indiana 46032. The Company's

common stock trades on the NASDAQ Stock Exchange under the symbol "PTVCA" for the Company's Class A common stock and "PTVCB" for the Company's Class B common stock.

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23.     The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

24.     Protective Insurance, through its subsidiaries, engages in marketing and underwriting of property and casualty insurance products. It offers commercial automobile insurance products, such as commercial motor vehicle liability, physical damage, and general liability insurance; workers compensation insurance; medical and indemnity insurance products; non-trucking motor vehicle liability insurance; fidelity and surety bonds; and inland marine insurance products consisting of cargo insurance, as well as workers' compensation insurance for the commercial automobile industry. The Company also provides various additional services, such as risk surveys and analyses, safety program design and monitoring, government compliance assistance, loss control, and cost studies; research, development, and consultation in connection with new insurance programs that comprise the development of systems to assist customers in monitoring their accident data; and claims handling services to clients with self-insurance programs. Protective Insurance serves trucking and public transportation fleets, as well as independent contractors in the trucking industry. It primarily operates in the United States, Puerto Rico, Canada, and Bermuda. The Company was formerly known as Baldwin & Lyons, Inc. and changed its name to Protective Insurance Corporation in August 2018. Protective Insurance was founded in 1930 and is headquartered in Carmel, Indiana.

25.     On February 16, 2021, Protective Insurance announced that they had entered into a

proposed transaction:

MAYFIELD VILLAGE, Ohio and CARMEL, Ind., Feb. 16, 2021 (GLOBE NEWSWIRE) -- The Progressive Corporation (NYSE: PGR) and Protective Insurance Corporation (NASDAQ: PTVCA and PTVCB) today announced that they have entered into a definitive agreement under which Progressive has agreed to acquire all of the outstanding Class A and Class B common shares of Protective for $23.30 per share in cash, for a total transaction value of approximately $338 million. The acquisition is expected to close prior to the end of the third quarter of 2021, subject to customary closing conditions, including receipt of certain required regulatory approvals and approval of Protective's Class A shareholders. Protective's Board of Directors has unanimously approved the transaction, based on the unanimous recommendation of the Special Committee of the Board. Certain Protective shareholders owning approximately 35% of Protective's outstanding Class A common stock that had previously entered into a contingent sale agreement terminated their obligations to close the transactions under that agreement and entered into a voting agreement with Protective and Progressive in support of the sale to Progressive.

"As a leader in commercial auto insurance, we're excited to expand our capabilities with the expertise Protective offers in larger fleet and affinity programs and by providing additional product lines for us to add to our portfolio," says Commercial Lines President, Karen Bailo. "Our Commercial Lines business provides one of our greatest opportunities to expand our addressable market and grow. This move allows us to add products that will help us support larger fleets and brings expertise in workers' compensation coverage for the transportation industry, which are new areas of business for us and can help us to meet the needs of our commercial customers. We look forward to working with the employees of Protective and appreciate the knowledge they bring."

"The Special Committee of the Board has been focused on what is in the best interest of Protective and its stakeholders and we are pleased to achieve that objective," said John D. Nichols, Jr., Chair of the Special Committee of Protective's Board. "This transaction aligns well with the direction of Protective, provides stability and opportunity for growth and will deliver a significant, immediate cash premium to Protective's shareholders—all of which the Special Committee and the Board believe creates the ideal outcome for Protective. The Board would also like to recognize the Shapiro family for its over 40-year stewardship of Protective."

"We are excited to announce this agreement with Progressive, which is a milestone in Protective's history," said Jeremy Johnson, Protective's Chief Executive Officer. "With Progressive's scale and resources, we expect to deliver greater value to our policyholders, while continuing to provide the exceptional service they have come

to expect from us. Progressive shares our commitment to excellence in serving customers, and we are confident they are the ideal owner for Protective. Together, we will be able to deliver innovative offerings and superior customer service to even more customers across the country."

Mr. Johnson continued, "This transaction is truly a testament to the hard work and dedication of our talented team. By combining with Progressive, we expect Protective and its employees will have greater opportunities to grow as part of a larger and more diversified organization."

**Transaction Details**

Upon the completion of the transaction, Protective shareholders will receive $23.30 per share in cash from Progressive. Progressive will fund the purchase through liquid investments on hand. The per share price represents a 49.1% premium and 63.2% premium, respectively, to Protective's unaffected 30-day volume-weighted average Class A and Class B share prices as measured on February 12, 2021.

Progressive plans to maintain Protective's offices in Carmel, Indiana and retain Protective's employees.

Baker & Hostetler LLP is serving as legal advisor to Progressive. Piper Sandler & Co. is serving as financial advisor to Protective and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor to Protective.

\* \* \*

26.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Protective Insurance's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

27.     On March 15, 2021, Protective Insurance filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain

any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Protective Insurance Financial Projections*

28.     The Proxy Statement fails to provide material information concerning financial projections by Protective Insurance management and relied upon by Piper Sandler in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Protective Insurance management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29.     For the Company Projections, the Proxy Statement fails to disclose (i) the Company's book values per share for fiscal years ending 2021 to 2024; and (ii) the Company's operating earnings per share for fiscal years ending 2021 to 2024. This information is material as it was used in the financial analyses conducted by Piper Sandler.

*Omissions and/or Material Misrepresentations Concerning Piper Sandler's Financial Analysis*

30.     With respect to Piper Sandler's *Comparable Company Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for Protective Insurance and the companies observed by Piper Sandler in the analysis.

31.     With respect to Piper Sandler's *Net Present Value Analysis* for the Company, the Proxy Statement fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of exit multiple ranges of 0.60x-1.00x price to December 31, 2024 book value per share and 8.0x-12.0x price to 2024 operating earnings per share; (iii) the inputs and assumptions underlying the range of discount rates ranging from 10.0% to 12.0%, (iv) book value and operating earnings per share as provided by the Company's management to Piper Sandler.

32.     With respect to Piper Sandler's *Analysis of M&A Transactions Involving Publicly Traded P&C Insurance Companies*, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Piper Sandler in the analysis.

33.     With respect to the Information about Piper Sandler section of the Proxy Statement, it fails to disclose whether Piper Sandler was retained by Progressive in the two years preceding the delivery of its fairness opinion to the Company, and the fees, if any, it received by Progressive for any engagement for financial or investment banking services provided.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37.    Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Piper Sandler and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Protective Insurance within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Protective Insurance, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Protective Insurance,

including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Protective Insurance, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 22, 2021                                     **MELWANI & CHAN LLP**

                                        By:   /s *Gloria Kui Melwani*
                                              Gloria Kui Melwani (GM5661)
                                              1180 Avenue of the Americas, 8th Fl.
                                              New York, NY 10036
                                              Telephone: (212) 382-4620
                                              Email: gloria@melwanichan.com

                                              *Attorneys for Plaintiff*